## IN RE ASSIGNMENT OF A. L. HOBELMAN.

*Assignment—Claim for labor superior to lien of chattel mortgage.*

A claim due for labor performed three months prior to an assignment is superior to the lien of a previously executed chattel mortgage.

The clause in § 3206a Rev. Stat., providing that such claims have preference over all others, applies to liens on a trust fund, whether such fund is realized from the sale of real or personal property.

*Decided December 8, 1886.*

The case was submitted on an agreed statement of facts; from which it appears that on January 26th, 1886, A. L. Hobelman assigned his property to John K. Love, for the benefit of his creditors, without preferences. Among other debts Hobelman owed George Fagan and Lawrence Kirk for services rendered during the three months next preceding the assignment.

On the 23rd day of December, 1883, Hobelman being indebted to the Moerlein Brewing Company, in the sum of $1,500, executed and delivered to it a

# ERRATA.

Page 90.—*Syllabus*—A claim due for labor, etc., is *not* superior to the lien, etc.

chattel mortgage on the goods and chattels subsequently assigned. The property was afterwards sold by the assignee, by the order of the Probate Court, which now holds the proceeds for distribution.

It is claimed by Fagan and Kirk, that they have a superior lien for their debt upon the property covered by the mortgage of the Moerlein Brewing Co., and subsequently assigned, under section 3206a of the Revised Statutes.

It is contended on behalf of the Moerlein Brewing Company.

First. That Section 3206a applies only to real estate.

Second. That the parties have waived their lien by not filing an itemized statement, duly verified, within thirty days from the expiration of the three months, as provided for by said act.

Third. That said act is in conflict with art. second, sec. 28 of the constitution, and therefore void.

*J. K. Love* for lien-holders.

*Von Seggern, Phares & De Wald* for Moerlein Brewing Co.

Goebel, J.

The General Assembly, on the 18th of April, 1883, enacted Section 3206a, which reads as follows :

" Laborers and employes of any persons, associa-

tion of persons, or corporations, whether such employment be at agriculture, mining, manufacture or other manual labor, shall have a lien upon the real property of their employers for their wages, which is hereby declared to be superior to the following liens taken or attaching during the existence of such unpaid labor claims, to-wit: liens of attachment, liens of mortgage given or taken at a time of actual insolvency of the debtor, or with a view of preferring creditors, or to secure a pre-existing debt, and superior to all claims for homestead or other exemptions, except under section fifty-four hundred and thirty ; *and in all cases where property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall be first paid out of the trust fund, in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust.* The lien herein provided shall be deemed to be waived by the laborer or employe as to any portion of such labor, unless within thirty days from the expiration of three months from the performance of such portion, he shall file with the recorder of the county where the labor was performed an itemized statement, verified by affidavit, of the amount, kind and value of the labor performed within said period, with all credits and offsets, and

the amount then due him therefor, which verified statement, when so filed, shall be recorded in a book kept for the purpose, and shall become and operate as a lien upon the real property of the employer, without any specific description thereof, for the period of one year from and after the filing thereof, and if an action is brought to enforce the lien within that time, it shall continue in force until finally adjudicated; and the proceedings to enforce such lien shall be the same as in other cases of lien, against the owner of the property and all other persons interested; provided, that if several persons have or obtained liens under the provisions of this section, against the property of the same employer, they shall have no priority among themselves, but all shall be paid *pro rata*, nor shall they have priority over those obtaining liens under sections thirty-one hundred and eighty-four, thirty-one hundred and eighty-five, thirty-one hundred and eighty-six, and thirty-one hundred and eighty-seven of this chapter, but the persons obtaining liens under sections thirty-one hundred and eighty-four, thirty-one hundred and eighty-five, thirty-one hundred and eighty-six and thirty-one hundred and eighty-seven shall have priority as provided therein."

I am of the opinion that the middle clause of this section, upon which Fagan and Kirk rely, and which is as follows:

"And in all cases where property of an employer

is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall be first paid out of the trust fund, in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust," is so disconnected from the balance of the statute, that if stricken out, that which would remain is complete in itself, and would be capable of being enforced in accordance with the legislative intent. The intention of the legislature, was to give to laborers and employes a lien upon the *real* property of their employers, for their wages, superior to the liens mentioned in said section, and to provide a mode to obtain such lien and for its enforcement. The middle clause of said section, herein referred to, gives to employes, where property of an employer is placed in the hands of an assignee, receiver or trustee, a lien upon the trust fund, in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust, when such claims have accrued during the three months preceding the appointment of such assignee, trustee or receiver.

It is evident that this clause applies to liens on a trust fund, whether such fund was realized from the sale of real or personal property, or from any other source.

There is a wide distinction between the two clauses; not alone as to the lien itself, but also as to time and priority. If this section is to be considered as a whole, and is given the construction asked for, there would be an inconsistency not warranted by a careful reading of the section. They are not so connected with and dependent on each other as to warrant a belief that the legislature intended them as dependent parts of a whole. Hobelman, by the execution and delivery of the chattel mortgage, transferred and assigned the title to the property to the mortgagee; and it became the general owner of it, subject only to Hobelman's right of redemption. The mortgagee of personal property takes his mortgage subject to the provisions of our assignment laws in force at the time. The assignee was entitled to the property, and the interests of the mortgagee are transferred to the fund, *Lindemann* v. *Ingham*, 36 O. S. 1. The ruling in this case determines the status of the parties, and leaves no room for holding, that if the mortgagee was the owner and entitled to the property, the assignee had no interest, and there is no trust fund within the meaning of the act. It must follow, that the assignee, being entitled to the property, and having sold it, the money arising from such sale becomes trust funds in his hands, subject to distribution, after the determination of the priorities of liens by this Court.

Have Fagan and Kirk a superior lien to that of the Moerlein Brewing Co. ? At the time of the execution and delivery of the chattel mortgage by Hobelman to the company the claim of Fagan and Kirk was not in existence. Again, at the time of the accruing of the claim and lien of Fagan and Kirk, they had knowledge of the existence of the mortgage lien of this company.

But it may be said that at the time of the execution and delivery of this mortgage, the law which gave to employes a lien, was in force, and whatever lien or right accrued to this company, was subject to any right or lien of employes that might subsequently accrue. In other words, that it was within the power of Hobelman to defeat an existing lien by incurring subsequent liabilities.

The contract with the mortgagee was, that this property should be liable for the payment of the mortgagor's debt. This contract was entered into prior to the existence of the claim of these employes. Let it be understood that a lien may be defeated by the subsequent conduct of the mortgagor, authorized by law, by incurring subsequent liabilities, and no prudent man will invest; no mortgagee, under such circumstances, would be safe under such a law. In vain would he look to his mortgage, or to the provisions of the existing laws of the State for his security, if that security could, at the pleasure of the mortgagor, acting

under authority of law, be impaired. The contract with the mortgagor was that the mortgagee should have a lien. This contract was good in law, and to deprive him of it now, by operation of this section, would be to materially impair the contract; for it is evident that a substantial right is affected by this law. It has the effect of imparting some new stipulations into the contract, or it fails to leave the party a remedy such as was assured to him by the law in force when the contract was made. The legislature did not intend, in the enactment of this law, to affect a subsisting right. Such legislation would be pernicious and against public policy, which alone would be a sufficient reason for preventing its enforcement. But giving this act a proper construction—doing that which would seem to be equitable and just, and considering the object which induced its enactment, I hold that the act does not affect existing liens, but that such employes have a lien on the trust fund superior to any and all subsequent liens, etc.

Whether the middle clause of this section is in conflict with art. 2, sec. 28, of the Constitution, which inhibits the passage of laws impairing the obligation of contracts, it is not necessary to determine, in view of the ruling just made. The presumption is in favor of the validity of every act, and no act should be declared unconstitutional until it is clearly shown to be in conflict with the organic law. It should always be

the duty of the Court to give an act such construction as would carry out the intention and meaning of the legislature.

NOTE.—The judgment in this case was reversed by the Hamilton Common Pleas and affirmed by the Circuit Court.